1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawpc.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: 310.663.0705
Fax: 310.359.0258

*Attorneys for Plaintiffs*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NAJA OGBURN,
AMBERLYN JOHNSTON, and
CAMILLE LAUREL, for themselves and
all others similarly situated,

        Plaintiffs,

     v.

WHISPERTEXT, INC.,

       Defendant.

**CASE NO. 2:20-cv-4124**

**CLASS ACTION COMPLAINT FOR:**

1. **VIOLATION OF THE FEDERAL STORED COMMUNICATIONS ACT;**
2. **INTRUSION UPON SECLUSION;**
3. **NEGLIGENCE & NEGLIGENCE *PER SE*;**
4. **NEGLIGENT MISREPRESENTATION;**
5. **BREACH OF IMPLIED CONTRACT – DATA BREACH;**
6. **VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349; AND**
7. **VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

    Plaintiffs NAJA OGBURN, AMBERLYN JOHNSTON, and CAMILLE LAUREL (collectively, "Plaintiffs"), bring this action against Defendant WhisperText, Inc. ("Defendant"), on behalf of themselves and all others similarly situated to obtain damages, restitution, and injunctive relief for the Class, as defined *infra*, from WhisperText. Plaintiffs make the following allegations upon

information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States, and pursuant to 18 U.S.C. § 2707 and 18 U.S.C. § 1964. This Court has supplemental jurisdiction over Plaintiffs and Class Members' state law claims under 28 U.S.C. § 1367.

2.      In addition, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendant.

3.      This Court has personal jurisdiction over Defendant because its principal place of business is in this District, it transacts business in this District, and it has substantial contacts in this District.

4.      In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and its principle place of business is in this District.

## NATURE OF THE ACTION

5.      Defendant owns and operates an application (or app) known as "Whisper" which allows users to post and share photos and video messages anonymously. Whisper has hundreds of millions of users.

6.      Plaintiffs bring this class action as a result of a breach of the security of Defendant's database which left years of users' most intimate confessions exposed on the Internet. These posts, referred to as "whispers" are tied to the users' age, location and other details. The data exposure allowed anyone to access all of

the location data and other information posted to the popular social app. The records were viewable on a non-password-protected database open to the public Internet.

7.    Many of the records involved children. A search of users who had listed their age as 15 returned 1.3 million results. Upon information and belief such information included, but was not limited to, the users' stated age, ethnicity, gender, hometown, nickname, any membership in groups, many of which are devoted to sexual confessions and discussion of sexual orientation and desires, and location coordinates of the users' last submitted post, many of which pointed back to specific schools, workplaces and residential neighborhoods ("Personal Information").

## PARTIES

8.    At all relevant times, Plaintiff Naja Ogburn is and was a citizen and resident of the State of New York. Plaintiff Ogburn downloaded the Whisper app and created an account in 2012 when she was 12 years old. Plaintiff Ogburn created an account on the app and provided confidential Personal Information in reliance on Defendant's promise of anonymity. Plaintiff Ogburn did not seek consent to use the app from her parents nor did her parents provide consent. Plaintiff Ogburn was injured in that her confidential Personal Information was exposed to the public and made available on the Internet due to the security breach.

9.    At all relevant times, Plaintiff Amberlyn Johnston is and was a citizen and resident of the State of New York. Plaintiff Johnston downloaded the Whisper app and created an account in 2012 when she was 15 years old. Plaintiff Johnston created an account on the app and provided confidential Personal Information in reliance on Defendant's promise of anonymity. Plaintiff Johnston did not seek consent to use the app from her parents nor did her parents provide consent. Plaintiff Johnston was injured in that her confidential Personal Information was exposed to the public and made available on the Internet due to the security breach.

10.     At all relevant times, Plaintiff Camille Laurel is and was a citizen and resident of the State of New Jersey. Plaintiff Laurel downloaded the Whisper app and created an account in 2014 when she was 17 years old. Plaintiff Laurel created an account on the app and provided confidential Personal Information in reliance on Defendant's promise of anonymity. Plaintiff Laurel did not seek consent to use the app from her parents nor did her parents provide consent. Plaintiff Laurel was injured in that her confidential Personal Information was exposed to the public and made available on the Internet due to the security breach.

11.     Defendant is a Delaware corporation with its principal place of business in Los Angeles, California. As a mobile social networking company, Defendant does business throughout the United States, including this District.

## FACTUAL ALLEGATIONS

12.     Defendant launched the Whisper app in or about March 2012. In April 2015, Whisper reached 10 million monthly active users. As of March 2017, Defendant had a total of 17 billion monthly pageviews on its mobile and desktop websites, social channels and publisher network, with 250 million monthly users across 187 countries.

13.     Defendant claims that it is "the largest online platform where people share real thoughts and feelings . . . without identities or profiles," with more than 1 billion anonymous posts. Users are urged to "share secrets" and "express yourself openly and honestly" on the app, which regularly sends smartphone notifications with notes such as, "Get honest. What was the last lie you told?"

14.     In order to encourage users to post on the app, WhisperText promotes itself as "the safest place on the internet."

15.     The database of posts, called "whispers," is comprised largely of sensitive personal confessions, e.g., "My son was conceived at a time when I cheated on his father . . . I just hope he will never find out," one post read. Another, written by a user who said she was a 16-year-old girl, said, "I really really really

really need advice from a mom right now."

16. On or about March 10, 2020, researchers discovered and revealed that the entire database was viewable by anyone on the public Internet without any need for a password.

17. The exposed data included, but was not limited to, the users' stated age, ethnicity, gender, hometown, nickname, any membership in groups, many of which are devoted to sexual confessions and discussion of sexual orientation and desires, and location coordinates of the users' last submitted post, many of which pointed back to specific schools, workplaces and residential neighborhoods ("Personal Information").

18. The data exposure also allowed anyone to access all of the location data tied to posted "whispers." The data included the location coordinates of the users' last submitted post, many of which pointed back to specific schools, workplaces and residential neighborhoods.

19. Cybersecurity experts were able to access nearly 900 million user records from the app's release in 2012 to the present day. According to these experts, the ability to download all of the data in bulk—and potentially combine it with other sensitive data sets—represented a huge risk for users' privacy.

20. Kyle Olbert, a human rights activist and researcher who reviewed the exposed data, stated that, "This is the most intimate data laid bare in a massive unprotected database for the entire world to see." "No matter what happens from here on out, the data has been exposed for years," Olbert added. People could "have their lives ruined and their families blackmailed because of this."

21. The database contained posts from more than 1.3 million users who had listed their age as 15.

22. Defendant knew or should have known that a substantial number of Whisper users were sexual predators. The data exposure revealed that app rated users on the potential that they were a sexual predator. A data point called

CLASS ACTION COMPLAINT
5

"predator_probability" gave about 9,000 users a score of 100 percent. Other data points were called "banned from_messaging" and "banned_from_high_schools."

23.    Defendant knew or should have known that Whisper was collecting Personal Information and geo-location that could be used to target users if the database was compromised or exposed.

24.    Plaintiffs and Class Members have been damaged by the exposure of their Personal Information.

25.    Plaintiffs' Personal Information was exposed as a direct and proximate result of Defendant's failure to protect and keep secure the intimately person information entrusted to it by Plaintiffs and Class Members.

26.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from blackmail, fraud, and identity theft.

27.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of having their Personal Information exposed.

28.    Plaintiffs and Class Members face substantial risk of being targeted for future blackmail, phishing, data intrusion, and other illegal schemes based on their Personal Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members.

29.    Plaintiffs and Class Members also suffered a loss of value of their Personal Information when it was wrongly publicly exposed to the world by Defendant. Numerous courts have recognized the propriety of loss of value damages in related cases.

30.    Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiffs and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not.

31.    Plaintiffs and Class Members have suffered or will suffer actual injury

as a direct result of the Defendant's failure to protect their Personal Information. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the wrongful exposure of their data.

32.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Personal Information, which is believed to remain in the possession of Defendant, is protected from further by the implementation of security measures and safeguards.

33.    Further, as a result of Defendant's conduct, Plaintiffs and Class Members are forced to live with the anxiety that their Personal Information—which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

34.    As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## CLASS ACTION ALLEGATIONS

35.    Plaintiffs seek class certification of the Class and Subclasses set forth herein pursuant to Federal Rule of Civil Procedure 23.

36.    Plaintiffs Ogburn, Johnston and Laurel seek certification of the following national class ("National Class"):

> **National Class**: All persons residing in the United States who registered for the Whisper app.

37.    Plaintiff Laurel seeks class certification of claims for the common law privacy cause of action "Intrusion Upon Seclusion," on behalf of a multi-state subclass defined as follows (the "Multi-State Subclass"):

> **The Multi-State Subclass**: All persons residing in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware,

Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who registered for the Whisper app.

38.    Plaintiffs Ogburn and Johnston seeks certification of the following state subclass ("New York Subclass"):

**New York Subclass**: All persons residing in the State of New York who registered for the Whisper app.

39.    Plaintiff Laurel seeks certification of the following state subclass ("New Jersey Subclass"):

**New Jersey Subclass**: All persons residing in the State of New Jersey who registered for the Whisper app.

40.    Plaintiffs reserve the right to modify or refine the Class or Subclass definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

41.    Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendant, Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or their parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class or Subclasses; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

### *The Classes Satisfies the Rule 23 Requirements*

42.    <u>Ascertainability</u>. The proposed Class and Subclasses are readily

ascertainable because they are defined using objective criteria so as to allow Class Members to determine if they are part of a Class or Subclass. Further, the Class and Subclasses can be readily identified through records maintained by Defendant.

43.   Numerosity (Rule 23(a)(1)). The Class and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of Class or Subclass Members, as identified and described herein, is not known, but upon information and belief, the Whisper app has more than 20 million users.

44.   Commonality (Rule 23(a)(2)). Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass Members, including the following:

a)   Whether Defendant engaged in the activities referenced in the above paragraphs;

b)   Whether Defendant's acts and practices complained of herein amount to acts of intrusion upon seclusion under the law of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia;

c)   Whether Defendant's acts and practices complained of herein violate N.Y. Gen. Bus. Law § 349;

d)   Whether Defendant's acts and practices complained of herein violate the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.*; and

e)   Whether members of the Class and Subclasses have sustained damages, and, if so, in what amount.

CLASS ACTION COMPLAINT

9

45.    <u>Typicality (Rule 23(a)(3))</u>. Plaintiffs' claims are typical of the claims of members of the proposed Class and Subclasses because, among other things, Plaintiffs and members of the Class and Subclasses sustained similar injuries as a result of Defendant's uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Defendant.

46.    <u>Adequacy (Rule 23(a)(4))</u>. Plaintiffs will fairly and adequately protect the interests of the proposed Class and Subclasses. Plaintiffs' interests do not conflict with the interests of the Class and Subclass Members and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Class and Subclasses.

47.    <u>Predominance & Superiority (Rule 23(b)(3))</u>. In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class and Subclass Members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to individual Plaintiffs is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action devise presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

48.    <u>Particular Issues (Rule 23(c)(4))</u>. Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claim consists of particular issues that are common to all Class and Subclass Members and are capable of class-wide resolution that will significantly advance the

litigation.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

## VIOLATION OF THE FEDERAL STORED COMMUNICATIONS ACT, 18 U.S.C. § 2702

### (Brought on Behalf of National Class Members)

49.    Plaintiffs incorporate paragraphs 1 through 48 in this Complaint as if fully set forth.

50.    The Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information. The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S. Rep. No. 99-541 at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555 at 3557.

51.    Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

52.    The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

53.    Through their servers (which are under Defendant's control), Defendant provides an "electronic communication service to the public" within the meaning of the SCA because Defendant's services allow users to submit their Personal Information and post messages to the Whisper app and allows users to communicate electronically with other users through Defendant's servers.

54.    By failing to take commercially reasonable steps to safeguard sensitive Personal Information and allowing it to be exposed without any security measures on the public Internet, Defendant knowingly divulged customers' private

communications and Personal Information, in violation of the SCA.

55.    Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A).

56.    The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system." 18 U.S.C. § 2711(2).

57.    An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photo optical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(4).

58.    Through their servers, Defendant provided remote computing services to the public within the meaning of the SCA.

59.    By failing to take commercially reasonable steps to safeguard sensitive private information, Defendant knowingly divulged customers' Personal Information that was carried and maintained on Defendant's remote computing service.

60.    As a result of Defendant's conduct described herein and its violations of Sections 2702(a)(1) and (2)(A), Plaintiffs and Class Members have suffered injuries and damages as alleged herein. Plaintiffs, on their own behalf and on behalf of the putative Classes, seek an order awarding themselves and Class Members the maximum statutory damages available under 18 U.S.C. § 2707.

## COUNT II

### INTRUSION UPON SECLUSION

### (Brought on Behalf of the Multi-State Subclass)

61.    Plaintiff Laurel, individually and on behalf of Multi-State Subclass Members, incorporates paragraphs 1 through 48 in this Complaint as if fully set forth.

62.    Plaintiff Laurel and Multi-State Subclass Members have reasonable expectations of privacy in their mobile devices and their online behavior generally. Plaintiff Laurel's and the Multi-State Subclass Members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious collection and tracking of Personal Information of Plaintiff Laurel and the Multi-State Subclass Members employed or otherwise enabled by the Whisper app.

63.    The reasonableness of such expectations of privacy is supported by Defendant's promise to keep the "whispers" of Plaintiff Laurel and Multi-State Subclass Members anonymous.

64.    Defendant intruded on and into the solitude, seclusion, or private affairs Plaintiff Laurel and Multi-State Subclass Members by failing to maintain users' anonymity and allowing its entire database of "whispers" and associated Personal Information, including geo-tagging data, to be exposed on the public Internet and allowing third-parties to intrude on Personal Information that was meant to be kept anonymous.

65.    These intrusions are highly offensive to a reasonable person. WhisperText has allowed third parties to access highly confidential Personal Information, including location data, thereby enabling the targeting of a vulnerable population—children. Moreover, the Whisper app exposed children to sexual predators. The extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Personal Information of Plaintiff Laurel and

Multi-State Subclass Members with potentially countless third parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

66.    Plaintiff Laurel and Multi-State Subclass Members were harmed by the intrusion into their private affairs caused by WhisperText as detailed throughout this Complaint.

67.    Defendant's actions and conduct complained of were a substantial factor in causing the harm suffered by Plaintiff Laurel and Multi-State Subclass Members.

68.    As a result of Defendant's actions, Plaintiff Laurel and Multi-State Subclass Members seek nominal and punitive damages in an amount to be determined at trial. Plaintiff Laurel and Multi-State Subclass Members seek punitive damages because Defendant's actions—which were malicious, oppressive, willful—were calculated to injure Plaintiff Laurel and Multi-State Subclass Members and made in conscious disregard of their rights. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

## COUNT III

### NEGLIGENCE & NEGLIGENCE *PER SE*

### (Brought on Behalf of the New York Subclass Members)

69.    Plaintiffs Ogburn and Johnston, individually and on behalf of New York Subclass Members, incorporate paragraphs 1 through 48 in this Complaint as if fully set forth.

70.    Upon coming into possession of Personal Information ( *i.e.,* private, non-public, sensitive financial and personal information) of Plaintiffs Ogburn and Johnston and New York Subclass Members, Defendant has (and continue to have) a duty to exercise reasonable care in safeguarding and protecting the information from being compromised and/or stolen. Defendant owed a duty to prevent precisely the type of harm that occurred as a result of the data breach.

71.    Furthermore, Defendant assumed a heightened duty to exercise care

in safeguarding and protecting the information provided by users, based on Defendant's affirmative promises to Plaintiffs Ogburn and Johnston and New York Subclass Members that Whisper was as "the safest place on the internet."

72.    Defendant had a duty to timely disclose to Plaintiffs Ogburn and Johnston and New York Subclass Members that a data breach had occurred and their Personal Information had been compromised, or was reasonably believed to be compromised.

73.    Defendant also had a duty to put into place internal policies and procedures designed to detect and prevent the theft or dissemination of Personal Information of Plaintiffs Ogburn and Johnston and New York Subclass Members.

74.    Defendant owed a duty to Plaintiffs Ogburn and Johnston and New York Subclass Members under the SCA regarding the handling of electronically stored information, as set forth in Count I, *supra*, including the duty to take commercially reasonable steps to safeguard sensitive Personal Information and to not knowingly disclose that information.

75.    Defendant, by and through its above negligent acts and/or omissions, breached its duties to Plaintiffs Ogburn and Johnston and New York Subclass Members by failing to exercise reasonable care in protecting and safeguarding their Personal Information which was in Defendant's possession, custody, and control.

76.    Defendant, by and through its above negligent acts and or omissions, breached their duty to timely disclose the fact that Personal Information of Plaintiffs Ogburn and Johnston and New York Subclass Members had been or was reasonably believed to be have been compromised.

77.    Defendant's breach of duties owed to Plaintiffs Ogburn and Johnston and New York Subclass Members under the SCA constitute negligence *per se*.

78.    But for Defendant's negligent and wrongful breach of its duties owed to Plaintiffs Ogburn and Johnston and New York Subclass Members, their Personal Information would not have been compromised.

79.    Personal Information of Plaintiffs Ogburn and Johnston and New York Subclass Members was compromised and/or stolen as a direct and proximate result of Defendant's breach of its duties as set forth herein.

80.    As a direct and proximate result of Defendant's acts and omissions, Plaintiffs Ogburn and Johnston and New York Subclass Members have suffered injuries and damages as alleged herein.

81.    The Defendant's conduct was undertaken in bad faith, with malice, and/or was willful and wanton and in reckless and conscious disregard of the rights of Plaintiffs Ogburn and Johnston and New York Subclass Members, which entitles Plaintiffs Ogburn and Johnston and New York Subclass Members to be awarded punitive damages or exemplary damages in an amount sufficient to punish and deter Defendant and also to deter other entities and persons from similar conduct in the future.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

### (Brought on Behalf of New York Subclass Members and New Jersey Subclass Members)

82.    Plaintiffs individually and on behalf of New York Subclass Members and New Jersey Subclass Members, incorporate paragraphs 1 through 48 in this Complaint as if fully set forth.

83.    Defendant falsely represented to Plaintiffs, New York Subclass Members, and New Jersey Subclass Members that their Personal Information and postings would remain anonymous and that the app was "the safest place on the internet."

84.    Plaintiffs, New York Subclass Members, and New Jersey Subclass Members did not know that Defendant had made these misrepresentations and omissions and reasonably believed Defendant's misrepresentations to be true.

85.    Plaintiffs, New York Subclass Members, and New Jersey Subclass

CLASS ACTION COMPLAINT

16

Members reasonably relied on Defendant's misrepresentations in registering for and using Whisper.

86.    As a result of Defendant's breaches, Plaintiffs, New York Subclass Members, and New Jersey Subclass Members were damaged.

87.    Defendant's conduct was done in bad faith, with malice, and/or was willful and wanton and in reckless disregard of the rights of Plaintiffs, New York Subclass Members, and New Jersey Subclass Members, which entitles Plaintiffs, New York Subclass Members, and New Jersey Subclass Members to be awarded punitive damages or exemplary damages in an amount sufficient to punish and deter Defendant and also to deter other entities and persons from similar conduct in the future.

## <u>COUNT V</u>
## BREACH OF IMPLIED CONTRACT – DATA BREACH
### (Brought on Behalf of New York Subclass Members
### and New Jersey Subclass Members)

88.    Plaintiffs individually and on behalf of New York Subclass Members and New Jersey Subclass Members, incorporate paragraphs 1 through 48 in this Complaint as if fully set forth.

89.    When Plaintiffs, New York Subclass Members, and New Jersey Subclass Members provided their Personal Information to Defendant in exchange for Defendant's services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

90.    In entering into such implied contracts, Plaintiffs, New York Subclass Members, and New Jersey Subclass Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

91.    Defendant solicited and invited Plaintiffs, New York Subclass Members, and New Jersey Subclass Members to provide their Personal

Information as part of Defendant's regular business practices. Plaintiffs, New York Subclass Members, and New Jersey Subclass Members accepted Defendant's offers and provided their Personal Information to Defendant.

92.    Implicit in this requirement was a covenant requiring Defendant to take reasonable efforts to safeguard this information and promptly notify Plaintiffs, New York Subclass Members, and New Jersey Subclass Members in the event their Personal Information was compromised.

93.    Similarly, it was implicit that Defendant would not disclose Personal Information of Plaintiffs, New York Subclass Members, and New Jersey Subclass Members.

94.    Notwithstanding its obligations, Defendant knowingly failed to safeguard and protect Personal Information of Plaintiffs, New York Subclass Members, and New Jersey Subclass Members. To the contrary, Defendant allowed this information to be disseminated to unauthorized third parties.

95.    Plaintiffs, New York Subclass Members, and New Jersey Subclass Members would not have entrusted their Personal Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure. Plaintiffs, New York Subclass Members, and New Jersey Subclass Members would not have entrusted their Personal Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

96.    Plaintiffs, New York Subclass Members, and New Jersey Subclass Members fully and adequately performed their obligations under the implied contracts with Defendant.

97.    Defendant's above wrongful actions and/or inactions breached its implied contracts with Plaintiffs, New York Subclass Members, and New Jersey Subclass Members by failing to safeguard and protect their Personal Information, which in turn directly and/or proximately caused Plaintiffs, New York Subclass

Members, and New Jersey Subclass Members to suffer substantial injuries, as described *supra*.

## COUNT VI

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (Brought on Behalf of New York Subclass Members)

98.    Plaintiffs Ogburn and Johnston, individually and on behalf of New York Subclass Members, incorporate paragraphs 1 through 48 in this Complaint as if fully set forth.

99.    Plaintiffs Ogburn and Johnson and New York Subclass Members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349 ("Section 349").

100.    Defendant is a "person," "firm," "corporation," or "association" within the meaning of Section 349.

101.    Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

102.    Defendant's conduct constitutes "deceptive acts or practices" within the meaning of Section 349. Defendant violated Section 349, by, among other things, Defendant's failing to keep the information posted by users anonymously and by exposing users' Personal Information on the public Internet.

103.    Defendant's conduct occurred in the conduct of trade or commerce, and was directed at consumers.

104.    As a result of Defendant's deceptive acts and practices, Plaintiffs Ogburn and Johnson and New York Subclass Members were injured and damaged in that they suffered a loss of privacy through Defendant's failure to safeguard Personal Information.

105.    Because Defendant's willful and knowing conduct caused injury to Plaintiffs Ogburn and Johnson and New York Subclass Members, Plaintiffs and New York Subclass Members seek recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable

attorneys' fees and costs, an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 349. Plaintiffs Ogburn and Johnson and New York Subclass Members seek punitive damages because Defendant's actions—which were malicious, oppressive, willful—were calculated to injure Plaintiffs Ogburn and Johnson and New York Subclass Members, and made in conscious disregard of the rights of Plaintiffs Ogburn and Johnson and New York Subclass Members. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

## COUNT VII

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT,**

**N.J. Stat. Ann. §§ 56:8-1 *et seq.***

**(Brought on Behalf of New Jersey Subclass Members)**

106.    Plaintiff Laurel, individually and on behalf of New Jersey Subclass Members, incorporates paragraphs 1 through 48 in this Complaint as if fully set forth.

107.    The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1 *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

108.    Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

109.    Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

110.    Defendant violated the New Jersey Consumer Fraud Act by, among other things, failing to keep the information posted by users anonymously and by exposing users' Personal Information on the public Internet.

111.    As a result of Defendant's deceptive acts and practices, Plaintiff Laurel and New Jersey Subclass Members were injured and damaged in that they

suffered a loss of privacy through Defendant's failure to safeguard Personal Information.

112.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

113.   Defendant intended to mislead Plaintiff Laurel and New Jersey Subclass Members and induce them to rely on its misrepresentations and omissions.

114.   Plaintiff Laurel and New Jersey Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a)   Certify this case as a class action, appoint Plaintiffs as Class and Subclass representatives, and appoint Plaintiffs' counsel to represent the Class and Subclasses;

b)   Find that Defendant's' actions, as described herein, constitute: (i) a violation of the Federal Stored Communications Act, 18 U.S.C. § 2702; (ii) a breach of the common law claim of intrusion upon seclusion in the states of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington,

1    and West Virginia; (iii) negligence and negligence per se;
2    (iv) negligent misrepresentation; (v) breach of implied contract;
3    (vi) a violation of N.Y. Gen. Bus. Law § 349; and (vii) a violation
4    of the New Jersey Consumer Fraud Act.

c)    Award Plaintiffs and Class and Subclass Members appropriate
6    relief, including actual and statutory damages and punitive
7    damages, in an amount to be determined at trial; and

d)    Award all costs, including experts' fees, attorneys' fees, and the
9    costs of prosecuting this action.

Dated: May 5, 2020                    Respectfully submitted,

By: /s/ *Christopher L. Rudd*

**MASON LIETZ & KLINGER LLP**
Gary E. Mason (*pro hac vice* forthcoming)
E-mail: gmason@masonllp.com
Danielle L. Perry (SBN 292120)
E-mail: dperry@masonllp.com
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Phone: 202.640.1160
Fax: 202.429.2290

**MASON LIETZ & KLINGER, LLP**
Gary M. Klinger (*pro hac vice* forthcoming)
E-mail: gklinger@masonllp.com
4849 North Milwaukee Avenue, Suite 300
Chicago, IL 60630
Phone: 312.283.3814
Fax: 773.496.8617

**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawpc.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: 310.663.0705
Fax: 310.359.0258

*Attorneys for Plaintiffs the Proposed Class*

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues triable by a jury in the above-referenced action.

Dated: May 5, 2020

Respectfully submitted,

By: /s/ *Christopher L. Rudd*

**MASON LIETZ & KLINGER LLP**
Gary E. Mason (*pro hac vice* forthcoming)
E-mail: gmason@masonllp.com
Danielle L. Perry (SBN 292120)
E-mail: dperry@masonllp.com
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Phone: 202.640.1160
Fax: 202.429.2290

**MASON LIETZ & KLINGER, LLP**
Gary M. Klinger (*pro hac vice* forthcoming)
E-mail: gklinger@masonllp.com
4849 North Milwaukee Avenue, Suite 300
Chicago, IL 60630
Phone: 312.283.3814
Fax: 773.496.8617

**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawpc.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: 310.663.0705
Fax: 310.359.0258

*Attorneys for Plaintiffs the Proposed Class*